# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

AHMENDASIR MUSE,[1]

      Petitioner,

vs.

MARKWAYNE MULLIN, et al.,[2]

      Respondents.

No. 26-CV-4024-CJW-MAR

**ORDER**

_____

Petitioner Ahmendasir Muse's petition for writ of habeas corpus is before the Court. (Doc. 1). Respondents filed a response. (Doc. 6). Petitioner filed a reply. (Doc. 12). For the following reasons, the Court **grants-in part and denies-in part** petitioner's petition for writ of habeas corpus and **orders** that respondents provide him with a bond hearing.

## I.    *BACKGROUND*

Petitioner is a citizen of Somalia. (Doc. 9-2, at 1). On February 27, 2023, he arrived in the United States near San Ysidro, California. (*Id.*). He entered without inspection and was not admitted or paroled. (*Id.*). On March 2, 2023, United States Border Patrol ("USBP") served petitioner a Notice to Appear ("NTA") charging him with being inadmissible for being present in the United States without being admitted or

---

[1] The Court notes that petitioner's name is written Ahmendasir Abdi Muse on some of his immigration documents. *See* (Docs. 1-1, 1-2, 9-2, 9-3). This discrepancy makes no difference for the Court's analysis; the Court simply notes it.

[2] Pursuant to Federal Rule of Civil Procedure 43(c)(2), Secretary Mullin is automatically substituted for Kristi Noem.

paroled.  *See* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien[3] present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible[.]").  USBP released petitioner from its custody on an order of recognizance as part of its Alternatives to Detention ("ATD") program.[4]

Petitioner applied for asylum and for withholding of removal under both Title 8, United States Code, Section 1231(b)(3) and the Convention Against Torture.  (Doc. 1-2, at 3–15).  On May 16, 2024, an immigration judge denied petitioner's applications, and ordered petitioner removed to Somalia.  (Doc. 9-3); *see also* (Doc. 1-1, at 22-37 (oral decision of the immigration judge)).  On June 7, 2024, petitioner appealed that decision to the Board of Immigration Appeals, (Doc. 1-1, at 1–2); that appeal remains pending.  (Doc. 9-1, at 4).

On December 2, 2025, ICE brought petitioner into custody, alleging at least fifteen violations of the ATD program.  (Doc. 9-1, at 3).  Petitioner requested a bond hearing.  (Doc. 1-1, at 6–9).  On January 14, 2026, an immigration judge denied petitioner's request for release on bond, finding that the immigration court did not have jurisdiction.  (Doc. 9-4 (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025))).

On March 12, 2026, petitioner filed the instant petition with the Court, requesting "immediate release from his illegal detention."  (Doc. 1, at 2).  In the alternative, he asks for "a bond hearing where the government bears the burden to prove changed

---

[3] The United States Code and the accompanying federal regulations use the term "alien."  To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

[4] Although respondents provide no detail on this program, ATD generally monitors aliens through telephonic reporting, body-worn GPS, and a SmartLINK mobile application while they are released in the community.  *Alternatives to Detention*, Immigration and Customs Enforcement, https://www.ice.gov/features/atd.

circumstances of flight risk and danger." (*Id.*, at 7). In support of his motion, petitioner provided the Court with Exhibits 1 and 2. (Docs. 1-1 & 1-2). On March 30, 2026, respondents filed a response, arguing "[p]etitioner's detention is consistent with both the plain language of 8 U.S.C. § 1225(b)(2) and due process." (Doc. 6, at 6). They also provided the Court with a declaration from Angela Minner and Exhibits A, B, and C. (Docs. 9-1, 9-2, 9-3, 9-4). On April 6, 2026, petitioner filed a reply. (Doc. 12). Petitioner remains in ICE custody at the Woodbury County Jail.[5]

## II.    LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extents to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). The petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner."); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (stating that the burden of proof was upon the petitioner).

---

[5] https://locator.ice.gov/odls/#/results.

### III. DISCUSSION

Petitioner argues that his continued detention without a warrant and without a bond determination violates the Due Process Clause of the Fifth Amendment as well as the applicable statute and regulations. (Doc. 1, at 14–17). Because it determines the rest of petitioner's path towards relief, the Court begins with the statutory argument.

#### A. Statutory Argument

Before getting to petitioner's constitutional claim, the Court first addresses petitioner's claim that he is detained under Title 8, United States Code, Section 1226(a), which permits release on bond or a person's own recognizance. (Doc. 1, at 5). Respondents contend that, on the contrary, "[p]etitioner is not detained under § 1226(a), he is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)." (Doc. 6, at 3).

While this case was pending, the Eighth Circuit issued its opinion in *Herrera Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). After conducting statutory interpretation of both Title 8, United States Code, Sections 1225(b)(2)(A) and 1226(a), the Eighth Circuit determined that Section 1226(a), which permits discretionary release on bond, does not govern the detention of aliens apprehended inside of the United States who have not been lawfully admitted. *Id.* at *9. Rather, those aliens fall under the category contemplated by Section 1225(b)(2)(A), which requires mandatory detention for aliens not lawfully admitted. *Id.* at *11–12. The Court is bound by Eighth Circuit precedent. *Harrington v. Wilber*, 670 F.Supp.2d 958, 967 (S.D. Iowa 2009) ("This Court is obligated to abide by the decisions of the Eighth Circuit Court of Appeals, because such decisions are controlling until overruled by the Eighth Circuit en banc, by the Supreme Court, or by Congress." (cleaned up)). Thus, under controlling precedent, petitioner is detained under Section 1225(b)(2)(A), not 1226(a).

4

### B.   Warrant Argument

Thus, now having determined that petitioner is detained under Section 1225(b)(2)(A), the Court addresses petitioner's claim for relief based on petitioner's belief that he was detained without a warrant.  (Doc. 1, at 4–5).  More specifically, petitioner states that he "believes, based on prior practice of ICE, the circumstances of the alien's arrest, and the statements of the [p]etitioner, [p]etitioner was then redetained without a warrant."  (*Id.*, at 4).  Petitioner premises this claim on his detention being under Section 1226(a).  (*Id.*).  As explained above, the Eighth Circuit has determined that petitioner falls under 8 U.S.C. § 1225(b)(2)(A), and the Court must follow that precedent.  Arrests under § 1225(b)(2)(A), for aliens seeking admission to the United States, do not require a warrant.

> Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and that unless the alien has committed a specifically listed crime, the Attorney General may detain the alien or release the alien on bond or conditional parole. Section 1225(b)(2), on the other hand, provides that detention is mandatory for "an alien who is an applicant for admission."

*Velasco Hurtado v. Bondi*, No. 0:26-CV-546, 2026 WL 184884, at * 2 (D. Minn. Jan. 24, 2026); *see also* 8 U.S.C. § 1357(a)(2) (authorizing immigration officers to arrest an alien without a warrant if they have reason to believe the alien is in the United States in violation of law and is likely to escape before a warrant can be obtained); *see also Tejeda-Mata v. INS*, 626 F.2d 721, 724-25 (9th Cir. 1980) (upholding a warrantless immigration arrest under Section 1357(a)(2)); *United States v. Cantu*, 519 F.2d 494, 496-97 (7th Cir. 1975) (confirming that immigration officers may arrest without a warrant when statutory conditions under Section 1357 are met).  As stated, the Eighth Circuit has determined that petitioner is an applicant for admission subject to mandatory detention, and thus there is no warrant requirement.

5

All the cases petitioner cites as support for his claim to the contrary are for aliens detained Title 8, United States Code, Section 1226(a). *See, e.g.*, *Perez Marinero v. Bondi*, No. 0:26-CV-1007, 2026 WL 357653, at *1 (D. Minn. Feb. 9, 2026) ("The existence of a warrant matters, because it's the warrant that triggers 28 U.S.C. § 1226(a)."). The same is true for his request for relief based on a violation of the regulations. Petitioner has not cited any authority for a warrant requirement for an alien detained under Section 1225(b)(2)(A), and the Court is not aware of any. Thus, petitioner's request for habeas corpus relief is **denied** as to this ground.

### C.     *Due Process Clause Argument*

Next, petitioner argues that his detention violates the Due Process Clause of the Fifth Amendment because he "was detained without a pre-deprivation consideration of his actual flight risk or risk of dangerousness." (Doc. 1, at 2). According to petitioner, "When there is no individualized determination as to factors such as flight risk or dangerousness before ICE redetains an alien, it violates due process." (*Id.*, at 6). Respondents claim that "[p]etitioner's detention during removal proceedings is also consistent with due process." (Doc. 6, at 4). In his reply, petitioner argues that the Eighth Circuit "did not reach the due process issue" in *Herrera Avila*. (Doc. 12, at 3). Instead, petitioner argues "[e]ven if there is no due process right to a bond hearing for aliens going forward, as applied to [p]etitioner, the government's prior release . . . create[d] a liberty interest that due process protects[.]" (*Id.*, at 18). The Court addresses this argument next.

"[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). More specifically, the Supreme Court has found that the Due Process Clause extends to all persons present in the United States regardless of their immigration

6

status.  *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").  Thus, aliens have due process rights to life, liberty and property.  U.S. Const., amend. V; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976).  "This is because once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

"In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens."  *Mathews*, 426 U.S. at 79–80.  At the same time, once the government opts to provide a liberty interest, it cannot arbitrarily revoke that interest without due process of law.  *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  "A person's liberty is equally protected by the due process clause, even when the liberty itself is a creation of the State."  *Id.* at 558.  This applies to administrative agencies as well, and "an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests."  *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 n.12 (1984).  A person released from custody "has at least an implicit promise" that his release "will be revoked only if he fails to live up to the parole conditions."  *Morrissey. v. Brewer*, 408 U.S. 471, 482 (1972).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  To determine exactly the parameters of that opportunity to be heard the Court balances:

(1) the private interest that will be affected by the official action; against

7

> (2) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and
>
> (3) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.

*Id.* at 335 (cleaned up).

Regarding the two interests weighed and the first factor, "the interest in being free from physical detention by one's own government" "is the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Put another way, "freedom from imprisonment lies at the heart of the liberty that the Due Process Clause protects" *Zadvydas*, 533 U.S. at 690 (cleaned up); *accord Barrajas v. Noem*, No. 25-cv-00322, 2025 WL 2717650, at *6 (S.D. Iowa Sept. 23, 2025) (applying this rule to immigration detention). Regarding the second factor, "the Court considers 'whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks.'" *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025). Lastly, in looking at the risk of erroneous deprivation, courts consider the costs of additional procedure "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, petitioner acquired a liberty interest in release on his own recognizance when the government released him in 2023. The government has now arbitrarily revoked that interest by detaining him without demonstrating danger or flight risk. *See Betancourth v. Tate*, No. 4:26-cv-01169, 2026 WL 638482, at *4–5 (S.D. Tex. Mar. 6, 2026) (finding that the re-detention of an alien who was released on her own recognizance with conditions without a bond hearing violated procedural due process because of that previous release); *Alvarez-Rico v. Noem*, No. 4:26-CV-00729, 2026 WL 522322, at *5–

8

6 (S.D. Tex. Feb. 25, 2026) (finding the same in part because "a noncitizen who was previously released on a set of conditions has a strong liberty interest in avoiding re-detention"). The government has previously conducted bond hearings for detained aliens and released them as part of the ATD program, but changed course here without demonstrating any change in petitioner's circumstances to justify that change of course. Thus, given petitioner's strong interest in release and the relatively minimal burden on the government in providing a bond hearing, the *Mathews* factors favor providing petitioner's a bond hearing.

Respondents cite to cases analyzing the due process requirements of detention under Title 8, United States Code, Section 1226(c) to argue the contrary. *Demore v. Kim*, 538 U.S. 510, 523 (2003) (analyzing the detention of an alien with a "a long criminal record, involving drug crimes, attempted robbery, attempted burglary, and theft" and an order of deportation to Germany and another alien who was "convicted of manslaughter"); *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (analyzing the detention of an alien who was convicted of "theft, lying to the police . . . possessing marijuana and drug paraphernalia . . . [and] robbery with a dangerous weapon"). But in those cases, besides the detention being based on a different subsection of the statute, the government had demonstrated that the petitioner there was a danger or a flight risk, based on their criminal convictions. That is not the case here. Although the government has alleged violations of the ATD program requirements, it has not presented evidence of those violations nor given petitioner the opportunity to respond.

Thus, the Court finds that respondents must provide petitioner with a bond hearing. *See Dos Santos Silva v. Warden*, 8:26-CV-131, 2026 WL 926725, at * (D. Neb. Apr. 6, 2026) ("the proper remedy in this case is to order the government to provide the petitioner a bond hearing, to determine whether the petitioner may be released"). At the hearing, the government will bear the burden to demonstrate dangerousness or flight

9

risk. *See Dambreville v. Noem*, No. 4:25-cv-00514-SMR-SBJ, 2026 WL 602174, at \*5 (S.D. Iowa Jan. 12, 2026) ("The Court therefore orders that at the bond hearing, the Government must prove by clear and convincing evidence that Petitioner's continued detention is warranted based on flight risk or dangerousness. This allocation reflects settled practice in redetention cases."). This is so because "[w]hen the [g]overnment seeks to continue detaining someone it previously released, fairness demands that the [g]overnment shoulder the burden of justifying that detention." *Id.*; *see also Trsikurishvili v. Noem*, No. C26-15-LTS-MAR, 2026 WL 594360, at \*2 (N.D. Iowa Mar. 3, 2026) (ordering that the government "must provide [petitioner] a pre-detention hearing in which it bears the burden of proving by clear and convincing evidence that [he] is a danger to the community or flight risk or has failed to comply with the terms of his release"). Petitioner's request for habeas corpus relief is **granted** on this ground.

## IV. CONCLUSION

For those reasons, petitioner's petition for writ of habeas corpus (Doc. 1) is **granted-in-part and denied-in-part**. The Court hereby orders that within fourteen (14) days of the date of this order respondents provide petitioner an individualized bond hearing before an immigration judge at which the government bears the burden to demonstrate petitioner's dangerousness or flight risk.

**IT IS SO ORDERED** this 14th day of April, 2026.

 

_____

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa